```
                IN THE UNITED STATES DISTRICT COURT
               FOR THE EASTERN DISTRICT OF VIRGINIA
                          Richmond Division




    THE UNITED STATES OF AMERICA,

                                            Plaintiff,

              versus                                     3:18 CR 074

    JOHN GLENN WEED,

                                            Defendant




              Before:  HONORABLE JOHN A. GIBNEY, JR.
                    United's States District Judge




                           July 12, 2018

                         Richmond, Virginia




                        GILBERT F. HALASZ
                      Official Court Reporter
                         U. S. Courthouse
                       701 East Broad Street
                         Richmond, VA 23219
```

APPEARANCES


Brian Hood, Esq.
Assistant United States Attorney
For the United States



TATE BYWATER
by:  James R. Tate, Esq.
The Defendant
In his own proper person

```
1          THE CLERK:  Case number 3:18 CR 74.
2          United States of America versus John Glenn Weed.
3          Mr. Brian Hood represents United States.
4          Mr. James Tate represents the defendant.
5          Are counsel ready to proceed?
6          MR. HOOD:  United States is ready, Your Honor.
7          MR. TATE:  Defendant is ready, Your Honor.
8          THE COURT:  All right.
9          Mr. Tate, I don't think I have had you here before,
10   have I?
11         MR. TATE:  Well, if you you have, Your Honor, I have
12   forgotten it.  I am at the stage of forgetting things, but
13   I don't believe so.
14         THE COURT:  Where do you practice?
15         MR. TATE:  Vienna.
16         THE COURT:  Well, good to have an Austrian here.
17         All right.  So we are ready for the arraignment today
18   of Mr. Weed on various counts, count one of the
19   indictment.
20         Do you want to get us started?
21         MR. HOOD:  Yes, Your Honor.
22         Good afternoon.
23         THE COURT:  Good afternoon.
24         MR. HOOD:  Your Honor, the grand jury returned a
25   one-count indictment against Mr. Weed charging him with
```

1  theft of government property in violation of title 18
2  United States code section 641.  The maximum possible
3  punishment for the offense is ten years of incarceration,
4  $250,000 fine, up to three years of supervised release,
5  and a hundred dollar special assessment.
6      I am not aware of restitution in this case, Your
7  Honor.
8      Your Honor, the mechanical speedy trial date was
9  August 22nd; however, I believe The Court has in front of
10 it a motion to continue the case outside of the speedy
11 trial clock.  And I can inform The Court that the case on
12 its surface would seem fairly prosaic, but because of the
13 organization that Mr. Weed worked for, and the companies
14 that he worked for, a considerable amount of discovery
15 could be classified as secret or higher level, and we are
16 going to have to resort to SEPA procedures just to give
17 defense counsel the opportunity to review a lot of the
18 evidence.  And then we will take it from there.
19     There are about 40,000 e-mails of Mr. Weed's that
20 counsel wants to go through.  All that to say, the United
21 States is moving that the matter is complex, and that we
22 set an appropriate trial date because of that.
23     THE COURT:  All right.
24     So, is this a case in which there are allegations of
25 breaches of security other than taking this equipment?

1       MR. HOOD:  Your Honor, there are no charges on that
2  point.  There was evidence that had us looking at it,
3  things, for some period of time.  The United States
4  elected not to bring additional charges based on our
5  review and internal deliberations.
6       THE COURT:  Okay.  All right.  So what are these
7  devices, Mr. Hood?
8       MR. HOOD:  Your Honor, the devices, eleven of the
9  radios listed are something called Blue Force Trackers or
10 Friendly Force trackers.  These are little radio handsets,
11 or radio portable devices that are used by operators in
12 the field, special force operators, operatives with
13 intelligence agencies.  The radios themselves are
14 unclassified when they are not loaded with software.  When
15 they are loaded with the operating system they are
16 classified as secret and higher level.  What those radios
17 do is allow operational commanders located in the U.S. to
18 track the positions of various assets that are deployed in
19 hostile areas.
20      There is a 12th radio, I believe it is listed as the
21 AATR.  That is a large base station radio.  It doesn't go
22 on a member of one of the Seal Teams or something like
23 that.  It is used as part of active communications with
24 some of the other radios.
25      THE COURT:  Did Mr. Weed work for the government or

6

1    for a contractor?

2         MR. HOOD:  He worked for a contractor that worked

3    directly for the government.  He had potentially two

4    chains of command.  His contractor and a government

5    agency.

6         THE COURT:  All right.

7         Now, remind me.  I have only had one of these SEPA

8    cases.  Are we going to need to set up a secure room here

9    in the courthouse for things that occur in this case?  Or

10   is this just relating to the information that goes to

11   Mr. Tate?

12        MR. HOOD:  The answer to the question is possibly

13   yes.

14        THE COURT:  It depends on how far the case goes?

15        MR. HOOD:  Depends on how far the case goes, it

16   depends on the particular defense that the defendant and

17   counsel want to attempt to assert.  There is also -- there

18   are certain, under SEPA there are some options for us to

19   make substitutions which will eliminate the classified

20   information, but would be adequate for both sides

21   purposes.  If there are disputes, then we will either have

22   to present the information to chambers for review and then

23   take it back, or if it required extensive review we would

24   have to set up a facility.  I have done this before with

25   other cases, DOJ and the court have point people for this.

```
 1          THE COURT:  Yes, there is a woman from DOJ who came
 2    down to see me on the last one, and she was very helpful.
 3          MR. HOOD:  I can't remember the name, but that is
 4    exactly right.
 5          THE COURT:  A very nice person.
 6          MR. HOOD:  A very nice person, whoever she is.
 7          THE COURT:  Okay.
 8          Thank you very much, Mr. Hood.  All right.
 9          Mr. Tate and Mr. Weed, can you please come up to the
10    podium.
11          All right.  Mr. Weed, I have some questions to ask
12    you today to make sure that you understand what we are
13    doing today and your rights and so forth.  I am going to
14    ask you to answer those under oath.  You do not need to
15    swear on the bible if that is is contrary to your
16    religious beliefs.  You can simply hold up your hand and
17    say you affirm what you are saying is true.  Okay?  If you
18    want to swear on the bible, put your left hand on the
19    bible, raise your right, and face the clerk.
20                     (Defendant sworn)
21          THE COURT:  All right.  Mr. Weed, will you state your
22    full name, please?
23          THE DEFENDANT:  John Glenn, with two N's, Weed.
24          THE COURT:  How old are you?
25          THE DEFENDANT:  Fifty-seven.
```

```
1          THE COURT:  How far did you go in school?
2          THE DEFENDANT:  Three time college drop out.
3          THE COURT:  What kind of work do you to ordinarily?
4          THE DEFENDANT:  Covert communication system
5    specialist, Your Honor.
6          THE COURT:  Are you currently employed?
7          THE DEFENDANT:  No.
8          THE COURT:  All right.
9          Obviously you are able to speak and understand
10   English.  And I take it from your educational background
11   you are able to read as well.
12         THE DEFENDANT:  (Defendant nodded)
13         THE COURT:  You have to say "yes" or "no."
14         THE DEFENDANT:  Yes.  Yes, sir.
15         THE COURT:  Are you currently under the care of a
16   doctor for any reason?
17         THE DEFENDANT:  No, sir.
18         THE COURT:  How about a psychiatrist or psychologist
19   or mental health counselor or something like that?
20         THE DEFENDANT:  No, sir.
21         THE COURT:  Have you recently been under the care of
22   a doctor or any kind of mental health professional?
23         THE DEFENDANT:  No, sir.
24         THE COURT:  Have you recently been in the hospital
25   for any reason?
```

1          THE DEFENDANT:  No, sir.

2          THE COURT:  Are you addicted to alcohol or drugs,

3   whether legal or illegal?

4          THE DEFENDANT:  No, sir.

5          THE COURT:  Have you ever been treated for alcohol or

6   drug abuse?

7          THE DEFENDANT:  No, sir.

8          THE COURT:  Have you had anything of an alcoholic

9   nature to drink in the past 24 hours?

10         THE DEFENDANT:  No, sir.

11         THE COURT:  Have you had any drugs whether legal or

12  illegal in the past 24 hours?

13         THE DEFENDANT:  No, sir.

14         THE COURT:  You don't take any medication?

15         THE DEFENDANT:  No.  No, sir.

16         THE COURT:  You obviously have an attorney, Mr. Tate.

17  Have you received a copy of the indictment, that is to

18  say, the written charges charged against you?

19         THE DEFENDANT:  Yes, sir.

20         THE COURT:  Have you read it?

21         THE DEFENDANT:  Yes, sir.

22         THE COURT:  Have you had a chance to talk about the

23  charges against you with your attorney?

24         THE DEFENDANT:  Yes, sir.

25         THE COURT:  Mr. Tate, are you aware of any reason why

1    we should not accept his plea today?

2         MR. TATE:  No, Your Honor.

3         THE COURT:  All right.

4         Are you ready to enter your plea at this stage, sir,

5    your not guilty plea?

6         MR. TATE:  We are.

7         THE COURT:  All right.

8         Does he waive reading of the indictment?

9         MR. TATE:  He does, Your Honor.

10        THE COURT:  All right.

11        Please face the clerk.

12        THE CLERK:  John Glenn Weed, you understand the count

13   pending against you in the indictment.  I ask you now,

14   what is your plea, guilty or not guilty, as to count one?

15        THE DEFENDANT:  Not guilty.

16        THE CLERK:  Do you request trial by jury or trial by

17   The Court?

18        THE DEFENDANT:  Jury.

19        THE COURT:  All right.

20        Thank you very much.  You may be seated, sir.

21        Okay.  Now, Mr. Tate, Mr. Hood says the speedy trial

22   cutoff on this case is August 22, 2018.  Do you agree with

23   that?

24        MR. TATE:  I didn't know it was coming up, Your

25   Honor.  I didn't calculate it.  I just trusted Mr. Hood's

1    calculation.  But we are can not be prepared for trial in

2    that amount of time.

3         THE COURT:  Okay.

4         Then I have here a document that appears to be signed

5    by you and Mr. Weed and Mr. Hood -- all three of whom need

6    handwriting instruction.  And this says that you need

7    additional time to prepare the case for trial.  And

8    Mr. Hood has represented he has got 40,000 e-mails for you

9    to look at.

10        Let me just ask Mr. Weed.  Mr. Weed, do you agree

11   that the case cannot fairly be tried by August 22 this

12   year?

13        THE DEFENDANT:  Yes.  Yes, sir.

14        THE COURT:  You agree with that, Mr. Tate?

15        MR. TATE:  I do, Your Honor.

16        THE COURT:  All right.

17        So when do you think we could try this case -- you

18   can sit down -- Mr. Tate?

19        MR. TATE:  Your Honor, I suggest at the end of

20   November, early December, or any time thereafter.  I

21   brought a calendar through February.  Didn't know The

22   Court's calendar.

23        THE COURT:  All right.  Well, let's see.

24        Mr. Hood, when do you think?

25        MR. HOOD:  Your Honor, I -- November is a good

1    starting point.
2         THE COURT:  You have folks in your firm, Mr. Tate, I
3    take it?
4         MR. TATE:  Say again, Your Honor.
5         THE COURT:  You are not a sole practitioner.
6         MR. TATE:  No, no, we have other lawyers in the firm,
7    Your Honor.
8         THE COURT:  That will be able to help you with this
9    document review?
10        MR. TATE:  They will, but the problem with it is,
11   Your Honor, I think I have to do this myself.  The reason
12   is because this investigation has been going on since, I
13   believe, 2012.  And I represented Mr. Weed since 2015.  In
14   order to represent him I had to go and meet that nice lady
15   from the Justice Department that you were speaking of.
16   And they have a Department of Justice annex in Washington
17   where you go.  And first they have to do a background
18   investigation.  In this case for me it took I think five
19   months, Your Honor.  They interviewed people I had forgot
20   I even knew.  And so I finally got a top secret clearance.
21   I was able to go in the room and start looking at these
22   documents.
23        Obviously these are Mr. Weed's e-mails, these 40,000,
24   and he has to be with me.  Most of us have already been
25   cleared into this annex at the Department of Justice in

```
 1   Washington.
 2         So, I think I am going to have to do it, Your Honor.
 3         THE COURT:  All right.
 4         Well, you will be busy.  All right.
 5         Let's take a look at how long do you think this case
 6   will take to try, Mr. Hood?
 7         MR. HOOD:  The government's case should be concluded
 8   in two to three days.
 9         THE COURT:  All right.
10         So, if we allow -- you don't have any idea how long
11   the case will take at this stage.
12         Now, is the -- you can sit down, Mr. Tate.  I will
13   try to go through this.  Smiley versus Force Point is
14   still a case on the docket?
15         THE CLERK:  I don't have the calendar.  I can look it
16   up.
17         THE COURT:  Do you know what that case is about,
18   Greg?
19         And then what do I have on December 10 and 11?  I
20   have got something that looks like Ardis, A-R-D-I-S.
21         How about if we start this the 26th of November and
22   go through -- and I will reserve through the 7th of
23   December.
24         MR. HOOD:  I think that is plenty of time, Your
25   Honor.  I expect that is -- I am not aware of any
```

1    conflict.  I think that is a good date for the government.
2           THE COURT:  Mr. Tate?
3           MR. TATE:  Your Honor, that looks fine with me.
4           THE COURT:  All right.
5           So what we will do is we will set Weed for those
6    dates.
7           MR. TATE:  Reserve two weeks for trial, Your Honor?
8           THE COURT:  Well, I am reserving two weeks for it,
9    but I don't expect it to go that long.
10          MR. TATE:  Maybe we can try this case in a day.
11          THE COURT:  Well --
12          MR. TATE:  Very real possibility of that.  Just there
13   is no way for me to know right now, as Your Honor knows.
14          MR. HOOD:  I would say, Your Honor, I don't think we
15   will be able to prove our case in less than two days.  I
16   appreciate Mr. Tate's offering to help the government
17   present its case in a short period of time.
18          THE COURT:  Well, it starts, as it stands right now,
19   it starts on the day after Thanksgiving weekend and ends
20   on Pearl Harbor day.  So this trial will be remarkable
21   many respects.  Okay.
22          Now, Mr. Weed is out on bond.
23          Does the government have any objections to his bond
24   continuing?
25          MR. HOOD:  No, Your Honor.  I don't.  Government does

1    not.

2         THE COURT:  Mr. Weed, your bond is continued on the

3    same terms that you were released earlier.  But there is

4    an additional term, which is, that you show up for your

5    trial.  All right?  Whatever you do, don't be -- don't be

6    late.

7         Yes, sir, Mr. Tate?

8         MR. TATE:  We need to amend those terms, if Your

9    Honor would allow.  Right now he is restricted to the

10   Eastern District of Virginia.  I have asked for two; one,

11   he go to the District of Columbia Department of Justice,

12   with me.  We need to work on the case.

13        THE COURT:  That is where the e-mails are?

14        MR. TATE:  That is where he has been cleared in

15   before.

16        THE COURT:  Mr. Hood, what do you think about that?

17        MR. HOOD:  No objection.  While we are talking about

18   conditions, when counsel is done with that there is one

19   point I want to raise.

20        THE COURT:  Let's hear the other condition.

21        MR. TATE:  The other one is, Your Honor, when my

22   children got out of college I moved to Maryland so I could

23   live on the water.  I have a separate building with a home

24   office there.  I am 75 years old.  Instead of commuting

25   70 miles into Virginia as many days as I can I work at

1    home.

2         THE COURT:  You want him to come to your house?

3         MR. TATE:  It is very private.

4         THE COURT:  Where is your house?

5         MR. TATE:  On my property.

6         THE COURT:  Let's sound like I don't know where your

7    property is.  Where is it?

8         MR. TATE:  Southern Maryland, Your Honor, Calvert

9    County.

10        THE COURT:  What is the address?

11        MR. TATE:  3235 Lloyd Bowen Road, Saint Leonard,

12   20865.

13        THE COURT:  All right.

14        MR. TATE:  I am asking permission for him to come to

15   my office.

16        THE COURT:  Is Calvert over there near La Plata and

17   all that?

18        MR. TATE:  It is on one side is the Chesapeake Bay,

19   the other side is the Patuxent River, Your Honor, Solomons

20   Island, it is a long peninsula.

21        THE COURT:  Okay.

22        What do you think about that?

23        Can he go to the lawyer over there?

24        MR. HOOD:  No objection, Your Honor, as long as he

25   immediately returns to the Eastern District of Virginia

1    upon completion of talking to his attorney.
2         THE COURT:  All right.  We will change that.  Give
3    the address to the clerk, because I didn't get it all.
4         You had something, Mr. Hood?
5         MR. HOOD:  Yes, Your Honor.
6         This is just -- I was going to do it privately
7    counsel-to-counsel, but I think we can just do it on the
8    record without making a whole lot of drama about it.
9         Seven G directed the defendant to avoid contract with
10   any person who may be a victim or witness in the case.  It
11   has been brought to my attention by folks in the
12   government that Mr. Weed has been e-mailing a number of
13   former co-workers.  I understand that he has a desire to
14   prepare a defense.  I would ask that The Court remind
15   Mr. Weed he should not be the one doing that, rather it
16   should be his attorney and any appropriate investigator.
17        THE COURT:  Do you understand that, Mr. Weed?
18        THE DEFENDANT:  Yes, sir.
19        THE COURT:  Mr. Tate, you will make sure that
20   happens, right?
21        MR. TATE:  Yes, sir.  We are sorry about that.
22        THE COURT:  That is not a problem.  All right.
23        I find that this is a complex case and that the
24   interests of justice require us going beyond the ordinary
25   speedy trial cutoff date until the date I set the case for

```
1    in November of 2018.
2         All right.  Anything else, Mr. Hood?
3         MR. HOOD:  No, sir.
4         MR. TATE:  Your Honor, one other item.
5         THE COURT:  Okay.
6         MR. TATE:  I had to give up my phone and my watch
7    when I came into court.  The bailiff told me if I would
8    ask you kindly you might let me have a letter saying I can
9    bring my calendar to the courtroom.
10        THE COURT:  You have got a --
11        MR. TATE:  An iPhon watch.
12        THE COURT:  If you will, Wendy, let's prepare an
13   order that says he can do that for appearances in this
14   case.
15        All right.
16        MR. TATE:  Thank you, Your Honor.
17        THE COURT:  We will do that.  If you run in trouble,
18   let me know, okay?
19        MR. TATE:  Thank you.
20        THE COURT:  All right.
21        THE CLERK:  Your Honor, do you want to set a motion
22   deadline?
23        THE COURT:  What is that?
24        THE CLERK:  Do you want to go over the motions
25   deadline?
```

1       THE COURT:  Sorry.  Yes.  Thank you for reminding me.
2       Any motions challenging the sufficiency of the
3  indictment, or raising issues of venue or jurisdiction, or
4  or for discovery are due within, I will give you thirty
5  days.  Responses 21 days thereafter.  And rebuttal seven
6  days after the response.
7       All other motions are due 30 days before trial.  If
8  you need to request subpoenas, please get those ten days
9  before trial.  I need jury instructions seven days before
10 trial.  You can submit them electronically both with and
11 without citations.  And if you call chambers they give you
12 the e-mail address for the clerk that I will have at that
13 time.  All right?  Anything else?
14      MR. TATE:  Thank you, Judge.
15      MR. HOOD:  Nothing further.
16      THE COURT:  Thank you all very much.
17      Let's recess court.
18      We will take up Mr. McBride in five minutes, okay?
19                  HEARING ADJOURNED
20
21      THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT.
22
23              GILBERT FRANK HALASZ, RMR
24                 OFFICIAL COURT REPORTER
25